UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DASHONTE SCOTT JONES, | : | Case No. 3:22-cv-1154 (SVN) |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| ALICEA, | : | |
| *Defendant*, | : | October 31, 2022 |

## INITIAL REVIW ORDER

Plaintiff, Dashonte Scott Jones, currently incarcerated at MacDougall-Walker Correctional Institution ("MacDougall-Walker"), brought the present *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant, Alicea, a correctional officer. Plaintiff contends that Defendant violated his Eighth and Fourteenth Amendment rights by ignoring his obvious need for medical assistance following an incident when Plaintiff experienced respiratory distress and sustained injuries from falling in his cell. For the reasons set forth below, the Court will permit Plaintiff's Eighth Amendment claim to proceed against Defendant.

### I.   FACTUAL BACKGROUND

For the purpose of conducting an initial review, the Court accepts as true all facts alleged in the complaint. *Dehany v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017). The following facts, accepted as true, are set forth in Plaintiff's complaint.

Plaintiff suffers from sleep apnea and chronic asthma. Compl., ECF No. 1 at 5. He alleges that these conditions require him to sleep with a breathing machine, but the Department of Corrections ("DOC") has not provided him with such a device. *Id.*

In the early morning of July 18, 2021, Plaintiff was sleeping in his cell when he experienced a respiratory emergency. *Id.* Plaintiff "woke up flopping around like a fish out of water," and,

consequently, "flipped out of bed." *Id*. While falling, Plaintiff hit his head against his bed's metal ladder. *Id*. Plaintiff then attempted to stand and search for his asthma pump, but he felt dizzy and fell again, this time hitting his back against a metal chair. *Id*. At this point, Plaintiff was in severe pain and bleeding profusely from his head. *Id*. He crawled across his cell and pushed an "emergency button," but received no response. *Id*.

Eventually, Defendant walked by Plaintiff's cell and noticed Plaintiff lying on the floor. *Id*. While bleeding from the head and gasping for air, Plaintiff begged Defendant for help. *Id*. at 6. Defendant responded: "I'm not doing no paperwork shit. Just like black lives don't matter to cops, inmate lives don't matter to me." *Id*. Plaintiff heard an unknown person call out to Defendant, to ask what was happening. *Id*. Defendant responded that Plaintiff was bleeding on the floor, but that Defendant was not going to take any action that would necessitate the completion of paperwork. *Id*. Defendant left, leaving Plaintiff alone. *Id*.

After eventually finding, and using, his asthma pump, Plaintiff sat on the floor to wait for help. *Id*. While waiting, Plaintiff repeatedly pressed his cell's "emergency button," to no avail. *Id*. Plaintiff ultimately waited for help from approximately 4:40 a.m. to 6:20 a.m. *Id*. at 11. Plaintiff's plight was eventually noticed by a nurse making rounds to distribute medicine. *Id*. at 6. This nurse ordered Plaintiff to be sent to UConn Health, where he was treated and given a walker. *Id*. at 6–7.

Plaintiff contacted the DOC Commissioner and the warden of MacDougall-Walker regarding the ineffective emergency button in his cell, but alleges that he has not received any response. *Id.* at 6. In addition, Plaintiff filed an administrative grievance regarding Defendant's conduct, which was partially upheld, triggering further investigation. *Id*. at 6, 12. Plaintiff asserts,

however, that "nothing was done after [the] frivolous investigation," *id.* at 6, and his appeal of the ultimate grievance decision was denied, *id.* at 14.

Plaintiff asserts that, for reporting Defendant's misconduct, he has faced "retaliation" from Defendant and other correctional officers. *Id*. at 7. He generally describes this retaliation as a campaign of harassment, *id*., though his complaint does not contain many specific details. He alleges that the walker he received from UConn Health was taken by Lieutenants Santiago and Chaney and, consequently, he has not been able to carry food trays or use the toilet. *Id.* The complaint is unclear, however, whether this act was in retaliation for Plaintiff's grievance against Defendant or in retaliation for a sexual abuse report Plaintiff filed against Lieutenants Santiago and Chaney pursuant to the Prison Rape Elimination Act. In addition, Plaintiff asserts that Officer Schortman and Lieutenants Santiago and Chaney have "made it clear" that they disapproved of his administrative grievance against Defendant. *Id.* Plaintiff further alleges that these officers are holding his breathing machine "hostage" until he drops his "civil claims" against correctional officers and agrees not to file any future claims. *Id.*

In September of 2022, Plaintiff filed the present action against Defendant in his individual capacity for violations of the Eighth and Fourteenth Amendments. *Id*. at 6. Plaintiffs seeks compensatory and punitive damages, and he requests an emergency injunctive order requiring DOC officials to return his breathing machine and walker. *Id*. at 6, 10.

**II.     STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." Rule 8 of the Federal Rules of Civil Procedure

requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, a complaint must include enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement," does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

It is well-established that *pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation and internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint must allege enough factual allegations to meet the plausibility standard. *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### III.     INITIAL REVIEW OF PLAINTIFF'S COMPLAINT

Section 1983 creates a private federal cause of action against any person, acting under color of state law, who deprives an individual of their federally protected rights. *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). Here, Plaintiff claims Defendant violated his Eighth and Fourteenth Amendment rights by ignoring his obvious need for medical assistance. Liberally construing his complaint, the Court will consider whether Plaintiff's complaint also states a First Amendment retaliation claim. The Court will also analyze the other conduct Plaintiff has alleged and Plaintiff's request for a temporary restraining order.

A. <u>Eighth Amendment Claim Arising from Defendant's Conduct</u>

The Eighth Amendment to the U.S. Constitution, applicable to state actors through the Fourteenth Amendment,[1] prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; *see Robinson v. California*, 370 U.S. 660, 667 (applying the Eighth Amendment's standard to state conduct through the Fourteenth Amendment). To comply with the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of inmates" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citations and internal quotation marks omitted). To adequately plead an Eighth Amendment claim arising from unsafe prison conditions, a plaintiff must satisfy two requirements, the first objective and the second subjective. *Id.* at 834. First, the plaintiff must allege an objectively serious violation of the Eighth Amendment, meaning that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* Second, the plaintiff must allege that the prison official acted with a "sufficiently culpable state of mind," meaning that he acted with "deliberate indifference to inmate health or safety." *Id.* (citation and internal quotation marks omitted). A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety," a culpable mental state exceeding mere negligence and akin to criminal recklessness. *Id.* at 837, 839–40.

Beginning with the objective element, Plaintiff here alleges he awoke in acute respiratory distress, immediately fell twice, and sustained a head injury. When observed by Defendant,

---

[1] Plaintiff's complaint claims that Defendant violated the Eighth and Fourteenth Amendments by deliberately ignoring the substantial risk of serious harm to his health. The Court construes Plaintiff's reference to the Fourteenth Amendment as an accurate acknowledgement that the Eighth Amendment applies to state actors through the Due Process Clause of the Fourteenth Amendment. To the extent Plaintiff intends to raise a standalone due process claim under the Fourteenth Amendment, such claim is dismissed. Where Eighth Amendment and Fourteenth Amendment due process protections overlap, the due process claim will be subsumed by the Eighth Amendment claim as the Eighth Amendment offers greater protection to prisoners. *Felix-Torres v. Graham*, 521 F. Supp. 2d 157, 164 (N.D.N.Y. 2007).

Plaintiff was allegedly bleeding profusely and experiencing acute breathing difficulty. These allegations demonstrate a sufficiently serious harm to state an Eighth Amendment claim. *Murphy v. Walker*, 51 F.3d 714, 719 (7th Cir. 1995) (explaining that a head injury was sufficiently serious to require immediate attention); *Sadowski v. Dyer*, No. 3:18-cv-1074 (KAD), 2019 WL 2085994, at *8 (D. Conn. May 13, 2019) (concluding that the plaintiff plausibly alleged an objectively serious medical condition arising from severe pain in his head after hitting his head while in custody); *see also Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) (allegations that the plaintiff experienced severe pain and difficulty breathing, combined with a doctor's observation about the delay in treatment, were sufficient to satisfy the objective prong of a deliberate indifference claim).

Turning to the subjective element, Plaintiff alleges that Defendant observed him in an obvious state of distress and refused to alert other officials to Plaintiff's need for medical assistance. According to Plaintiff, Defendant explicitly stated that he was not seeking help because he wanted to avoid paperwork and that inmate lives do not matter to him. These facts are enough to plausibly allege that Defendant acted with subjective deliberate indifference. Considering Plaintiff's allegations that Defendant observed him wheezing, lying on the floor, experiencing extreme pain, and bleeding profusely from the head, the complaint plausibly claims that Defendant was "subjectively aware" that refusing to call for assistance created a substantial risk of further harm to Plaintiff. *Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006) (citing *Farmer*, 511 U.S. at 837). Although Defendant's alleged verbal abuse does not alone violate Plaintiff's constitutional rights, *see Williams v. Dep't of Corr.*, No. 3:22-cv-236 (KAD), 2022 WL 2981603, at *4 (D. Conn. July 28, 2022) (explaining that "mere verbal abuse, no matter how vile and repugnant, is not actionable under § 1983"), his sentiments, combined with his inaction in the face

of Plaintiff's alleged situation, evince a reckless indifference to the substantial risk of harm to Plaintiff caused by his wounds and medical conditions.

In sum, Plaintiff has pled a viable Eighth Amendment deliberate indifference claim against Defendant. This claim may proceed on the theory that Defendant violated Plaintiff's Eighth Amendment rights by finding Plaintiff in an obvious state of distress and failing to procure immediate medical assistance.

### B. First Amendment Claim

Although Plaintiff does not expressly raise a First Amendment claim against Defendant, his allegations sounding in retaliation suggest that he intends to raise such a claim. The First Amendment to the U.S. Constitution prohibits prison officials from retaliating against prisoners because they have engaged in constitutionally protected speech. *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly allege: (1) that he or she engaged in protected speech; (2) that a prison official took adverse action against him or her; and (3) that there was a causal connection between the protected speech and the adverse action. *Id.*

Regarding the first element, Plaintiff plausibly alleges that he engaged in protected speech, namely, by filing an administrative grievance against Defendant. The Second Circuit has held that "retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments." *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).

Plaintiff does not, however, plausibly allege that *Defendant* took an adverse action against him. Although Plaintiff conclusorily states that he has been retaliated against by "Alicia and his co-workers," the only specific instances of retaliation identified in the complaint pertain to non-

defendants, such as the alleged sexual abuse and the confiscation of his walker by Lieutenants Santiago and Chaney and Officer Schortman.  As explained above, Plaintiff clearly did not name them as defendants in this action, so their retaliatory actions cannot support any First Amendment claim against Defendant.  Plaintiff's allegations regarding retaliatory conduct by Defendant subsist of a general and conclusory accusation of harassment, which is not enough to state a plausible First Amendment claim.  *See Jones v. Harris*, 665 F. Supp. 2d 384, 397 (S.D.N.Y. 2009) (citing *Iqbal*, 556 U.S. at 678, for the proposition that retaliation claims "may not be conclusory; they must have some basis in specific facts that are not inherently implausible on their face").

Thus, to the extent Plaintiff intended to bring a First Amendment retaliation claim against Defendant, it is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

    C.  <u>Other Misconduct</u>

Plaintiff raises other allegations pertaining to DOC officials who are not parties to this action and facts unrelated to Defendant's conduct.  Those allegations are not sufficient to state independent claims.

For example, Plaintiff's complaint emphasizes the many times that he pressed an "emergency button" in his cell and received no response.  However, Plaintiff has not pleaded facts suggesting that Defendant was at fault for this failure in emergency notification.  For example, the complaint does not clearly allege that the emergency button was not properly functioning, or, alternatively, that the button was functioning and Defendant disregarded Plaintiff's repeated use of it.  Because Alicea is the sole Defendant in this action, he must have been personally involved in any alleged constitutional deprivation.  *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  Given that Plaintiff does not allege any personal involvement by Defendant in the emergency button failure, those factual allegations do not state a § 1983 claim against him.

Moreover, Plaintiff alleges Lieutenants Santiago and Chaney sexually abused him, and that those lieutenants and Officer Schortman retaliated against him. But the only Defendant named to Plaintiff's lawsuit is Alicea. Because Alicea is the only Defendant named in this action, the Court need not evaluate whether Plaintiff's complaint alleges facts sufficient to support § 1983 causes of action against other correctional officers arising from their conduct.[2]

### D. Emergency Injunctive Relief

Finally, Plaintiff seeks an emergency injunctive order requiring prison officials to return or provide a breathing machine and to return his walker. As an initial matter, it is not clear to the Court whether Plaintiff means to assert that prison officials have wrongly failed to provide him with a breathing machine, or whether prison officials have confiscated a breathing machine that was once in his possession. Plaintiff's allegation that prison officials have been "neglectful of giving" a breathing machine suggests that a breathing machine has never been issued to him. Compl. at 5. Later in his complaint, however, Plaintiff asserts that his breathing machine is being "held hostage," suggesting that he once possessed a breathing machine which is currently confiscated. With respect to his walker, Plaintiff does clearly allege that the walker issued to him in the course of his treatment at UConn Health was confiscated as an act of retaliation, although it was not confiscated by Defendant. *Id.* at 7.

Setting aside the ambiguity of Plaintiff's request for preliminary injunctive relief, his desired relief cannot flow from the claims raised in this action. "To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury

---

[2] To the extent Plaintiff seeks to initiate state criminal proceedings against Defendant, Compl. at 10, such relief is not within the power of a federal district court to grant to a prevailing civil litigant. *See Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 382 (2d Cir. 1973) (reasoning that a federal court generally lacks authority to supervise a state prosecutor's decision not to prosecute); *Benchmark Mun. Tax Lien Servs., Ltd. v. Lewis*, No. 3:19-cv-1096 (VAB), 2020 WL 2300217, at *3 (D. Conn. May 8, 2020) (explaining that a court lacks authority to treat a civil complaint as a criminal matter).

claimed in the [request] and the conduct giving rise to the complaint." *Baltas v. Maiga*, 3:20-cv-1177 (MPS), 2021 WL 47776533, at *2 (D. Conn. Oct. 13, 2021) (internal quotation marks and citation omitted).  Although Plaintiff alleges facts involving his breathing machine and walker, those facts do not arise from the conduct of the only named Defendant, but rather from that of other correctional officers who are not parties to this action.  Because Plaintiff's request for emergency injunctive relief is unrelated to his surviving Eighth Amendment claim, his request is denied.

## IV.    CONCLUSION

The Court enters the following orders:

**(1)** To the extent Plaintiff intended to bring a freestanding Fourteenth Amendment claim or a First Amendment retaliation claim against Defendant, such claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  Plaintiff's claim seeking criminal prosecution of Defendant is also **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  Plaintiff's request for emergency injunctive relief is **DENIED**.

**(2)** Plaintiff may **PROCEED** with an Eighth Amendment deliberate indifference claim arising from Defendant's alleged failure to procure medical assistance upon observing Plaintiff's obvious need for medical assistance.

**(3)** The Clerk shall verify Defendant's current work address and mail a copy of the Complaint, this Order, and a waiver of service of process request packet to Defendant in his individual capacity at his confirmed address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of the request.  If Defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(4)** Defendant shall promptly determine whether there is a basis to dismiss this action, in whole or in part, for any reason, including but not limited to the following: (a) failure to exhaust administrative remedies; (b) lack of jurisdiction; or (c) previous release of some or all claims at issue.  If Defendant believes that dismissal of the Complaint, in whole or in part, is warranted, an appropriate motion to dismiss shall be filed within 60 days of the appearance of counsel for Defendant in this matter.  The Court's determination that certain claims may proceed to service of process does not preclude the filing of a motion to dismiss by Defendant, as to any claim.

If Defendant believes that there is a sound basis to assert that the matter should be dismissed for failure to exhaust administrative remedies, but that such a question must be determined by a motion for summary judgment rather than a motion to dismiss, Defendant may file a preliminary motion for summary judgment on or before within 60 days of the appearance of counsel for Defendant in this matter, on that issue. The filing of a preliminary motion for summary judgment on the issue of exhaustion will not preclude the filing of a full motion for summary judgment at a later date.

The filing of a well-pleaded early dispositive motion under this provision by the deadline of 60 days from the appearance of counsel for Defendant in this matter will automatically stay any and all discovery.

If no early dispositive motion is filed, discovery will proceed in accordance with the Federal Rules of Civil Procedure.  Discovery will not be automatically stayed during the pendency of any motion to dismiss or other dispositive motion filed after the deadline set by this Order.

If no early dispositive motion is filed, Defendant must file an Answer to the Complaint within 60 days of the appearance of counsel for Defendant in this matter.

**(6)** To the extent discovery is not stayed by the filing of an early dispositive motion, it shall be completed within eight months (242 days) from the date of this order, that is, **June 30, 2023**. Discovery requests need not be filed with the Court.

**(7)** All motions for summary judgment that are not early dispositive motions governed by Order #4 above shall be filed by **July 31, 2023.**

**(8)** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c) 2 provides that Plaintiff **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. Plaintiff should also notify Defendant or the attorney for Defendant of his new address.

**(9)** The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties.

**(10)** The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and to the Department of Correction Legal Affairs Unit.

IT IS SO ORDERED.

                                                        /s/
                                        SARALA V. NAGALA
                                        UNITED STATES DISTRICT JUDGE